LESLIE N. SIMSON and GEORGE W. HUNTER

*v.*

ERNEST C. KLIPSTEIN.

[Decided September 28th, 1917.]

1. Where a contract for sale of lands was not under seal, the real parties in interest may be shown.

2. In view of the powers given complainants in this case, they represent the beneficiaries and certificate holders, who are not necessary parties to this cause.

On bill. On motion to strike out bill.

*Mr. Harry Wright* (*Mr. Martin Conboy,* of the New York bar), for the motion.

*Mr. Frederick Seymour, contra.*

LANE, V. C.

The bill in this case was filed to compel specific performance of a contract of sale. The contract is not under seal. It purports to be between the Midvale Chemical Works, an association, as party of the first part, and Ernest C. Klipstein, as party of the second part. It is signed for the party of the first part, Midvale Chemical Works, by George W. Hunter and Leslie N. Simson, trustees. · The suit is brought by Leslie N. Simson and George W. Hunter, and while in the opening paragraph of the bill they are not termed "trustees," yet by a perusal of the whole bill it is perfectly clear in just what capacity they bring their suit. The contract involves a large amount of property. The consideration is in excess of $200,000. It is dated the 29th day of May, 1917. On the 31st day of May, 1917, Klipstein went into possession of all the real estate and personal property embraced in the agreement and continued the active operation of the plant. On the 22d day of June, 1917, an adjournment of the closing of the title was had. On the 3d day of July, 1917, deed was tendered. Performance was declined, but Klipstein continued in possession of the property. Annexed to the bill of complaint, and made a part thereof, is an agreement setting forth precisely what the term "Midvale Chemical Works" imports. Leslie N. Simson and George W. Hunter, under the terms of this instrument, "associate ourselves together as trustees and hereby form an association to be known as 'Midvale Chemical Works.'" Article 2 provides:

"The Trustees shall have the power to contract and carry on in the name of and for the Association, any business which could be lawfully conducted or carried on by an individual, and in the conduct of such business, may use and invest any funds of the Association, and shall have full general power and authority to buy, sell, pledge, mortgage, grant, convey and exchange property of every description, real, personal or mixed," etc.

Article 4:

"The Trustees shall be deemed the absolute owners of all the property of the Association, and both the legal and equitable title to all such property shall be vested absolutely in them, their successors and the survivor or survivors of them, or to their successors, subject only to all applicable terms and conditions of this instrument."

Then follows the provisions with respect to the issuance by the trustees of certain classes of stock, A and B. These certificates give all holders right to participate in the profits of the association, and in case of distribution to an interest in the assets. The form of the certificate contains the following:

"The interest represented by this certificate is personal property, irrespective of the nature of the estate of the Trustee."

"No certificate holder, or his assigns, heirs or legal representatives, shall at any time have or claim any legal or equitable interest in the property, whether real, personal or mixed, of the Association, and nothing contained herein shall be considered as creating or giving to any certificate holder any interest in or to such property, but such certificate holder shall have an interest only in the net proceeds or profits which may be derived from such property, or in the proceeds of the said property on liquidation or distribution, and only when and as such proceeds may become distributable under the terms of the aforesaid Articles of Association."

Article 13:

"No certificate holder shall, as such, be a necessary or proper party complainant or defendant in any suit or other judicial proceeding relative to or affecting the property or assets of the Association."

Article 14:

"In every written contract that the Trustee shall enter into, relating to the business of the Association or estate or any part thereof, reference shall be made to these Articles and the person, firm or corporation contracting with said Trustees shall look to the funds and property, legal and equitable, of the estate for the payment under said contract of any debt, damage, judgment or decree, or any money that may become due and payable in any way by reason thereof," etc.

Article 15:

"No person dealing with the Trustees shall be charged with the duty of making any inquiry as to their authority to deal with the property of the Association, nor with the application of the purchase money for any property of the Association which they may purchase from the Trustees," etc.

There are other provisions of the trust agreement which I do not think it necessary, in view of what I have already quoted, to refer to.

To the bill of complaint, an answer in lieu of plea was filed. This answer sets up merely that on the 29th day of May, 1917, and ever since that date certain persons, seven in number, were holders of certificates in the form of class A, and that, therefore, they are proper, necessary and indispensable parties to the action. There is no allegation that these certificate holders are all of those holding certificates.

A large portion of the voluminous brief of counsel for the defendant is taken up in the discussion of matters which, in my view, are aside from the mark on this particular application. The sole question before me is whether, assuming that the bill of complaint correctly relates the facts, and that the parties bringing the suit have power to bring it, there is a fatal defect in parties complainant. It will be observed that although the Midvale Chemical Works is named as the first party in the bill of complaint, the contract is signed "Midvale Chemical Works, by George W. Hunter and Leslie N. Simson, Trustees." By reference to the articles of association it appears that it is distinctly provided that the trustees shall have full power to contract and buy and sell; that they shall be deemed the absolute owners of all the property of the association, and the legal and equitable title to all such property shall be vested absolutely in them; that the certificate holders shall have no interest, legal or equitable, in the property, whether real, personal or mixed; that they shall not be necessary or proper parties complainant or defendant in any suit.

The contract of sale not being under seal the real parties in interest may be shown. *Babcock* v. *Stobbe,* not reported. But the question which is before me is not whether the parties bringing this suit have the right to bring it, or in what capacity it should be brought. It is whether, assuming that they have the right to bring the suit, the parties referred to in the answer in lieu of plea are necessary parties. For the purpose of demonstrating this, the defendant must go to the articles of association, and upon going there, we find that it is expressly provided that they shall not be either necessary or proper parties.

The principle of law that *cestui que trustents* are, in some instances, necessary parties in suits dealing with the trust property,

is for the benefit of the *cestui que trustent*. It seems to me, upon the whole, that this case is well within the remarks of Mr. Justice Dixon, delivering the opinion of the court of errors and appeals, in *Smith* v. *Gaines, 39 N. J. Eq.* (at *p. 549*), and Vice-Chancellor Pitney in *Stevens* v. *Bosch, 54 N. J. Eq.* (at *p. 63*). In the latter case the vice-chancellor said: "This is not a suit to administer a trust, or in which the construction of it or the rights between trustees and *cestuis que trust* are at all involved. The trustee here represents his *cestuis que trust,* and the case is clearly within one of the exceptions mentioned by Mr. Justice Dixon in his opinion in *Smith* v. *Gaines, 39 N. J. Eq. 545* (at *pp. 549, 550*)."

Now, with respect to the form of the order or decree. In view of the allegations of the bill, not now denied, that the defendant has been since the 31st day of May in possession of this large amount of property, and that the complainants have completely performed, on their part, and of my inability to conceive how the defendant can be substantially injured whether the suit be brought in the name of the Midvale Chemical Works, by the present complainants as trustees, or by the present complainants, individually, acting under the articles of association, or by the fact that the contract happens to be signed in the manner in which it is rather than in a different manner, I am not disposed to advise an order or decree in this case which will permit, unless the complainants desire it, a double appeal to the court of errors and appeals. My recollection of the law is that upon the overruling of a plea—that is, under certain circumstances, unless the court otherwise directs, a final decree may be made in favor of the complainant. Whether this has been changed by the sixty-eighth rule which provides:

."If a defense be stated, which heretofore would have been the proper subject of a plea, the answer need not answer the allegations of the bill of complaint further than is necessary to support such defense,"

I do not now determine. I draw attention of counsel, however, to the fact that it is further stated:

"In such case, should the answer be found insufficient or untrue, the court may, in its discretion and on terms, permit the defendant to answer the bill fully, or may make such other order or decree as may be just."

Rule 67 provides:

"On a hearing of a motion, to strike out a pleading, the court may, in its discretion, order the application to stand over until the hearing, and if the objection is to the bill or counterclaim may require the same to be answered on such terms and conditions as may be ordered."

If I have the power, and if complainants so move, I will direct the hearing on the application to strike out this plea to stand over until the final hearing, in the meantime directing the defendant to answer upon the merits. No possible harm can come to the defendant from this course, for he has the same right to set up in his answer the defect that he now sets up as he had by the present answer in lieu of plea. If, upon final hearing, it appears to the court necessary to bring in the parties, which it is alleged should be brought in, there will be no difficulty in doing so, or at least a sufficient number of them to answer the purposes of the rule invoked.

Let an order or decree, approved by both sides, be presented, or let it be settled upon one day's notice.

### SUPPLEMENTAL MEMORANDUM.

That portion of the opinion of Vice-Chancellor Stevenson, in *Babcock* v. *Stobbe,* to which I refer, reads as follows:

"The proof is ample that when the agreement, which is the basis of the complainant's claim, this agreement of May 27th, 1909, was executed by Moore, both the complainant Babcock, or his agents, Shack and Vermilya, and the defendant Stobbe, and also Moore, understood that the subject-matter of the agreement of sale was the Stobbe farm—the farm owned by Stobbe—and that Moore was executing the contract in question, not for himself, but as agent for Stobbe in pursuance of the power of attorney which the complainant's attorney had drawn and which that attorney and the agent Shack knew well was the whole basis of Moore's authority to execute the contract so as to bind Stobbe.

"It would, it seems to me, be an amazing result of the application of antiquated technicalities if either the complainant Bab-

cock or the defendant Stobbe could in a court of equity maintain the proposition that by this contract they were not both bound.

"I have examined with care the numerous and conflicting decisions which counsel have cited bearing upon the technical questions pertaining to the status of these agreements as contracts *inter partes* under seal, and as contracts in writing under the operation of the statute of frauds and under the force of the rule excluding parol evidence offered to alter the contracts in writing. Without undertaking to discuss these technical legal questions, which could only be done at great length, and with the minute examination of many cases, I shall merely state my conclusion that this agreement stands not as a contract under seal but as a written agreement executed by one party personally, and by the other party through an authorized agent who was not authorized to execute the same under seal. In such a case the seal is a superfluity and may be disregarded, and the instrument has the status of a written contract of the principal not under seal. *Long* v. *Hartwell, 34 N. J. Law 118; Calhoon* v. *Buhre, 75 N. J. Law 439, 441.*

"It must be noted that one of the duplicate originals was not in fact executed by Moore under seal, notwithstanding the erroneous recitation in the attestation clause which merely shows that it was the expectation of the draftsman of the instrument that it would be executed under seal.

"With the aid of certain authorities which have been cited, an argument can be made in favor of the proposition that if this instrument in fact must be deemed a deed *inter partes* under seal, it can be taken in a court of equity as the deed of Stobbe. In my judgment, a court of equity would be astute to discover any theory of this transaction consistent with our modern law according to which the absurdity and injustice could be avoided of finding that the complainant paid his $750 upon the execution of this contract without receiving any obligation from Stobbe, the owner, to convey the land, but only the obligation of the agent Moore to convey the land which all the parties to the transaction well knew Moore did not own.

"While I cannot in this memorandum undertake to discuss the numerous cases which have been cited, or which I have examined, in which there is considerable conflict, it may be well to add that in many cases the great principle which is now firmly established, that a contract is to be construed in the light of the circumstances which surrounded the parties when they made it, has been overlooked. Our modern law in dealing with statutes, wills and contracts permits the court, in endeavoring to interpret these writings, to stand in the place of the legislature, of the testator, of the contracting parties, so as to see the things which they saw and know the things which they knew to which the written words are to be applied.

"That distinguished equity lawyer, Vice-Chancellor Van Fleet, in deciding the case of *Schenck* v. *Spring Lake Beach Improvement Co., 47 N. J. Eq. 44* (from which case I may say in passing the one at bar is plainly distinguishable), says (at *p. 48*): 'That a written contract, whether within the statute of frauds or not, and whether under seal or not, which is free from ambiguity and perfect in itself, and not the product of fraud, or the result of mistake, and which has not been changed by a subsequent contract, cannot be changed, varied or contradicted by oral evidence, but must be accepted as the only evidence by which the rights and liabilities of the contracting parties shall be measured and determined.' This may be accepted as an accurate statement of the law where the contract in question is 'perfect in itself,' and where the effort is made by parol evidence to have it 'changed, varied or contradicted.' The vast majority of contracts are not 'perfect in themselves,' but relate to things which have to be described and defined—things which the contracting parties knew and had before their eyes, but which the court cannot know unless parol testimony in regard to them is admitted. A contract is not 'changed, varied or contradicted by oral evidence' when it is *interpreted* by the court after the court has been placed in the position in which the contracting parties stood when they expressed themselves in the language of the contract.

"The correct exposition in our modern law of the rule excluding parol evidence 'to change, vary or contradict' a written instrument, may be ascertained upon reference to the following

authorities: *1 Greenlf. Ev.* §§ *277, 286, 287; 1 Wigm. Ev.* § *2470; 21 Am. & Eng. Encyl. (2d ed.) 1108, 1109; 17 Cyc. 673,* where a very large number of American and English decisions are cited. *2 Tayl. Ev.* § *108; Mumford* v. *Gething, 7 C. B. (N. S.) 305; 141 Eng. Reprint 834; Krell* v. *Henry (1903), 2 K. B. 753; Sullivan* v. *Visconti, 68 N. J. Law 543, 547."*

It must not be overlooked that the complete performance of the contract by the complainant takes it out of the statute of frauds.